IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| | : | |
| v. | : | No. 17-519-1 |
| | : | |
| ROBERT MACK | : | |

## MEMORANDUM

**Sánchez, C.J.**                                                                                           **June 25, 2019**

After a multi-day trial, Defendant Robert Mack was convicted of several drug and firearms offenses in connection with his role as a supplier of cocaine for manufacture into cocaine base in the Mill Creek section of Philadelphia.[1] As part of its verdict, the jury was asked to answer special interrogatories concerning the weight of drugs Mack allegedly trafficked. The jury found that the Government proved beyond a reasonable doubt that Mack was responsible for distributing 28 or more grams of crack, but *not* the greater quantity argued by the Government (and included on the verdict sheet)—280 or more grams of crack. In calculating Mack's advisory sentencing range under the United States Sentencing Guidelines, the Probation Office used the drug quantity found by the jury to determine Mack's base offense level. The Government objects, arguing that notwithstanding the jury's verdict, the Court should hold Mack accountable for 3.875 kilograms of crack cocaine—or more than 135 times the quantity found by the jury—using the preponderance of the evidence standard applicable at sentencing. The Court agrees with the Government both that it possesses the authority to find Mack accountable for a higher quantity of drugs than the jury and

---

[1] Specifically, Mack was convicted of conspiracy to distribute 28 or more grams of cocaine base in violation of 21 U.S.C. § 846; distribution of cocaine in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C); drug distribution or maintaining a house for drug distribution in a protected zone in violation of 21 U.S.C. § 860(a); possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c); and possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1).

that the appropriate drug quantity in this case is more than 28 grams. However, the Court does not agree that the Government has established the substantially higher drug quantity for which it seeks to hold Mack accountable by a preponderance of the evidence. Accordingly, as explained below and on the record at the June 20, 2019, sentencing hearing, the Government's objection is sustained in part and overruled in part.

**BACKGROUND**

In calculating Mack's Guidelines range, the Presentence Investigation Report (PSR) assigned him a base offense level of 26 under U.S.S.G. § 2D1.2(a)(1), which provides that the base offense level for distributing controlled substances in a protected zone in violation of 21 U.S.C. § 860(a) is two levels "plus the offense level from the drug quantity table in U.S.S.G. § 2D1.1(c) applicable to the quantity of controlled substances directly involving a protected location." In applying these provisions, Probation first determined, based on the jury's response to the special interrogatories, that the amount of cocaine base involving the protected location was between 28 grams and 112 grams, corresponding to an offense level of 24 under the drug quantity table in U.S.S.G. § 2D1.1(c). Probation then added the two additional levels required by U.S.S.G. § 2D1.2(a)(1), resulting in a base offense level of 26. At base offense level 26, with a criminal history category of I (which is not disputed), Mack's advisory Guidelines range was 63 to 78 months incarceration, plus an additional 60 months consecutive as required by Mack's conviction for violation of 18 U.S.C. § 924(c), for an effective range of 123 to 138 months' incarceration.

The Government's sentencing memorandum objected to the PSR's calculation of Mack's offense level and renewed its objection in its sentencing memorandum. The case proceeded to sentencing on June 14, 2019, and the Court heard argument from both parties on the Government's objection. The Court took the matter under advisement and continued the hearing until June 20,

2019. On June 19, 2019, the parties each submitted additional written materials in support of their respective positions, which the Court considered before resuming the hearing on June 20, 2019. During the resumed hearing, the Court issued an oral ruling sustaining in part and overruling in part the Government's objection. This Memorandum is issued to clarify the basis for the Court's oral ruling.

**DISCUSSION**

Although the Sentencing Guidelines are no longer binding, the Guidelines range is a factor that must be considered at sentencing and thus must be properly calculated. *See United States v. Gunter*, 462 F.3d 237, 247 (3d Cir. 2006). Here, the parties dispute the proper calculation of Mack's offense level under the Guidelines. The Government claims Mack's offense level is 36 based on a drug quantity for which Mack was acquitted. Mack claims the appropriate offense level is a 26 based on the jury's response to the special interrogatories. As explained in greater detail below, the Court sustains the Government's objection on the issue of whether this Court can consider conduct for which Mack was acquitted by the jury at sentencing but overrules the objection to the extent the Government asserts the appropriate offense level is 36.

The Government's objection presents the threshold issue of whether this Court can consider as "relevant conduct" a quantity of drugs for which Mack was acquitted. As noted, this Court submitted the quantity of drugs for which Mack was responsible to the jury in a special interrogatory. In response to the interrogatory, the jury found that the Government failed to prove beyond a reasonable doubt that Mack was guilty of a conspiracy to distribute 280 or more grams of cocaine base. Instead, the jury found that the evidence established beyond a reasonable doubt that Mack was guilty of a conspiracy to distribute 28 or more grams of cocaine base. Notwithstanding this aspect of the verdict, the Government argues that this Court has authority

pursuant to *United States v. Watts*, 519 U.S. 148 (1997), to sentence Mack as if he were responsible for the distribution for 3.875 kilograms of cocaine base in a protected zone based testimony presented by Marcus Royster and Frederick Porter at trial regarding Mack's drug sales.

On this threshold issue of whether the Court has the authority find Mack responsible for a higher quantity of drugs than found by the jury, the Court agrees with the Government and will sustain the objection. In *Watts*, the Supreme Court held that a jury's general verdict of acquittal did not preclude a sentencing court from considering the conduct underlying the acquitted charge, so long as that conduct was proved by a preponderance of the evidence. 519 U.S. at 157. The Third Circuit extended this holding to conduct underlying dismiss counts. *See United States v. Baird*, 109 F.3d 856, 870 (3d Cir. 1997). Here, however, the charge at-issue was the subject of a special interrogatory, and not a general acquittal or dismissal. Although this distinguishes the matter at bar from *Watts* and *Baird*, the Court finds that the rationale underpinning those decisions applies with equal force to the situation presently before the Court.

The Court notes that the Third Circuit has not addressed the application of *Watts* in this context in a precedential opinion. However, in at least two non-precedential decisions separate panels of the Third Circuit have affirmed sentences based on drug quantities greater than those found by juries, so long as those greater quantities were proven by a preponderance of the evidence. *See United States v. Moment*, 750 F. App'x 68 (3d Cir. 2018); *United States v. Lopez-Esmurria*, 714 F. App'x 125 (3d Cir. 2017). In line with those cases, the Court finds that it does possess the authority to consider as "relevant conduct" under the Guidelines evidence that Mack sold drugs in quantities greater than those found by the jury, so long as those quantities are supported by a preponderance of the evidence. Thus, the Government's objection is sustained on this point.

Although acknowledging that *Watts* and its progeny permit the consideration of acquitted conduct at sentencing, Mack argues the consideration of such evidence violates the Fifth and Sixth Amendments, under the Supreme Court's decisions in *Alleyne v. United States*, 570 U.S. 99 (2013), *Cunningham v. California*, 549 U.S. 270 (2007), *Blakely v. Washington*, 542 U.S. 296 (2004), and *Apprendi v. New Jersey*, 530 U.S. 66 (2000), which limit a sentencing court's ability to find facts that would impact the statutory penalties for a crime. In *United States v. Grier*, 475 F.3d 556 (3d Cir. 2007) (en banc), the Third Circuit held that the *Apprendi* line of cases does not apply when, as here, a district court makes factual findings that affect the advisory Guidelines range but not the statutory penalties. The Third Circuit recently reaffirmed this holding in *United States v. Gonzalez*, 905 F.3d 165 (3d Cir. 2018). To the extent Mack seeks to reverse the Third Circuit's holding in *Grier* or the Supreme Court's decision in *Watts*, he may raise those issues on appeal. However, *Gonzalez* makes clear that *Grier* is still controlling, and the Court is, therefore, bound to follow it. Accordingly, the Court finds that because the Court's factfinding impacts Mack's recommended sentence under the advisory Guidelines, but not the applicable statutory penalty, there is no issue under *Apprendi* or its progeny.

Having determined that the Court possesses the authority to consider the type of relevant conduct at issue here, the Court must next determine whether the Government has established the greater weight by a preponderance of the evidence, the standard of proof applicable at sentencing. *See United States v. Ciavarella*, 716 F.3d 705, 735-36 (3d Cir. 2013). As noted, the jury found the Government proved beyond a reasonable doubt that Mack was involved in a conspiracy to distribute 28 or more grams of cocaine base. The Government contends that the testimony of Marcus Royster and Frederick Porter establishes by a preponderance of the evidence that Mack was responsible for distributing 3.875 kilograms of cocaine base. The Court agrees that Royster

and Porter testified credibly that they bought cocaine from Mack and that those purchases, in the aggregate, totaled more than the 28 grams attributed to Mack by Probation, but finds that their testimony was simply too vague to establish the quantity alleged by the Government.

Having had the opportunity to observe Royster on the witness stand, the Court finds that Royster credibly testified that a buyer-seller relationship existed between he and Mack, but not the specific weight of drugs purchased alleged by the Government. For example, Royster vaguely testified that he purchased 2.25 ounces of cocaine powder from Mack "a couple of times," and that he would buy in that quantity from Mack "probably almost like every day, like every day for, like, a week." Also, the Government makes much of Royster's testimony that he purchased 4.5 ounce quantities on two occasions, but the Court finds it significant that Royster, when asked how many times he purchases 4.5 ounces, responded that he had done so once, and only after additional questioning, did he admit to buying in this quantity on another occasion.

As to Porter, the Court is not satisfied that the Government has filled the evidentiary gap between Porter's robust crack cocaine sales and his purchases from Mack. Porter's testimony establishes that he sold a large quantity of cocaine, but not that it all came from Mack. As both the Government and Defense elicited during Porter's testimony, Porter's operation was supplied by several individuals. Although Porter testified that Mack was his "most consistent" supplier and that he would buy "2.25 [ounces], 4.5 [ounces], and sometimes . . . nine [ounces]" of cocaine from Mack, the Court does not find such generalities—in the absence of corroborating evidence, such as wire taps, surveillance, cellular telephone data, or video—to be sufficient to attribute kilograms of weight to Mack.

To be sure, the Court finds that Royster and Porter's testimony establishes by a preponderance of the evidence that Mack was responsible for more than the 28 grams Probation

attributed to him. The record supports a finding that Mack was responsible for the distribution of more than 280 grams of cocaine base but less than 840 grams of cocaine base. Accordingly, the Court overrules the Government's objection, but nevertheless finds that the offense level in this matter is set by U.S.S.G. § 2D1.1(c)(5), and not, as Probation had determined, by U.S.S.G. § 2D1.1(c)(8).

The Court finds the Third Circuit's decision in *United States v. Moment* to be particularly informative. In that matter, the Government argued Moment was responsible for purchasing and distributing 46 kilograms of cocaine based on a cooperator's testimony that he would regularly purchase one kilogram of cocaine from the defendant every two weeks over the course of years. The cooperator's testimony was supported by toll records, cell phone data, wiretaps, and surveillance of both the cooperator and defendant. The jury declined to convict on the charge of conspiracy to distribute 5 kilograms or more of cocaine but found Moment guilty of the lesser included offense of conspiracy to distribute 500 or more grams of cocaine. Nevertheless, at sentencing, the Court imposed sentence based on the drug quantity alleged by the Government, finding the evidence was sufficient to establish that Moment was responsible for the greater weight by a preponderance of the evidence. Citing the extensive evidentiary record supporting the greater quantity and corroborating the cooperator's testimony, the Third Circuit affirmed.

Here, as in *Moment*, the Government asks the Court to find Mack responsible for a substantially greater quantity of drugs than the quantity for which he was convicted by aggregating the weight allegedly purchased by a cooperating witness over several years. Unlike *Moment*, however, the Government has not proffered the "bevy" of evidence corroborating its witnesses' testimony. The Government has not, for example, introduced toll records, cellular telephone data, wiretaps, or surveillance corroborating the existence of the long-term purchasing relationship

Royster and Porter claim existed during the time of the conspiracy. Thus, for the reasons previously discussed, the Court finds that although the two credibly testified that buyer-seller relationships between Royster and Mack and Porter and Mack existed, the Government has failed to establish by a preponderance of the evidence that Mack was responsible for the distribution of 3.875 kilograms of cocaine base.

Instead, the Court finds that a preponderance of the evidence before the Court, including the testimony of Royster and Porter, and the other cooperators and other evidence, establishes that Mack was responsible for the distribution of more than 280 but less than 840 grams of cocaine base, which corresponds to an offense level of 30 under the drug quantity table in U.S.S.G. § 2D1.1(c)(5) and a base offense level of 32 under U.S.S.G. § 2D1.2(a)(1). At offense level 32, with a criminal history category of I, Mack's Guidelines range is 121 to 151 months. Because Mack was convicted of violating 18 U.S.C. § 924(c), the Court must impose a mandatory minimum sentence of 60 months consecutive to any other term of imprisonment. Thus, Mack's effective Guidelines Range is 181 to 211 months' incarceration.

**CONCLUSION**

For the reasons stated above, the Government's objection to the PSR is sustained to the extent the Government argues that the Court has the authority to sentence Mack based on a quantity of drugs greater than that for which he was convicted so long as that quantity is proved by a preponderance of the evidence. The Court will deny the objection to the extent the Government argues the base offense level applicable to Mack should be fixed pursuant to his alleged distribution of 3.875 kilograms of cocaine base.

An appropriate order follows.

BY THE COURT:

/s/ Juan R. Sánchez
Juan R. Sánchez, C.J.